U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



The following constitutes the ruling of the court and has the force and effect therein described.

**United States Bankruptcy Judge**

**Signed December 28, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RONNIE WAYNE MOORE AND | § | CASE NO. 10-50434-RLJ-13 |
| BARBARA RUTH MOORE, | § | |
| | § | |
| DEBTORS. | § | |

## MEMORANDUM OPINION

The Court considers the motion of Ronnie and Barbara Moore (the "Moores") that seeks to avoid under section 522(f)(1)(A) of the Bankruptcy Code (11 U.S.C.) a judicial lien in favor of creditor Amarillo Trailer Sales & Rentals, Inc. d/b/a Area Trailer Sales & Rentals ("ATSR"). ATSR opposes the motion, asserting its interest does not constitute a judicial lien and thus cannot be avoided under section 522(f)(1)(A).

## Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact

and conclusions of law in accordance with the Federal Rules of Bankruptcy Procedure 7052 and 9014.

## Statement of Facts

The parties are in agreement concerning the facts that give rise to this dispute. The Moores filed this Chapter 13 case on September 15, 2010. On February 25, 2011, the Moores' Chapter 13 plan was confirmed by the Court. Well after their plan was confirmed, the Moores, on July 7, 2011, filed their motion seeking to avoid ATSR's asserted lien against funds currently held in the Moore's account at American Bank of Commerce. The parties submitted the facts to the Court by proffer and through the stipulated admission of documents.

Seven months prior to the Moores' bankruptcy case, on February 16, 2010, ATSR obtained a judgment from the Justice Court No. 3, Potter County, Texas, in its favor and against the Moores in the amount of $9,060.70, which amount consists of $3,743.21 in principal, $317.49 in interest to the date of judgment, and $5,000 in attorney's fees; plus costs of court and interest from the date of judgment at 18 percent per year. Exhibit 1. After obtaining the judgment, ATSR, in its efforts to collect on the judgment, obtained three other orders.

First, on March 1, 2010, the Justice Court issued an "Order Granting Application for Turnover Order," which provided that ATSR recover from the Moores "all costs . . . including reasonable attorney's fees of $2,500.00"; that the American Bank of Commerce "immediately freeze any and all checking or savings accounts, certificates of deposit, or investments or investment accounts, owned" by the Moores; that such bank "immediately freeze any and all additional funds" deposited into such accounts; that the bank provide an accounting of all such accounts; that the Moores "file any objection to this Turnover Order or claim of exemption" and, failing to do so, the bank would then have been directed to turnover all funds from the accounts

- 2 -

not subject to offset by the bank or held as collateral by the bank, up to an amount to satisfy the $9,060.70 judgment, plus per diem interest of $4.46 commencing on February 17, 2010, and the additional $2,500.00 in attorneys' fees awarded by the order. Exhibit 2.

Second, on March 15, 2010, the Justice Court issued a "Turnover Order" which, in pertinent part, recited that the Moores had within their possession "property together with records relating to that property, which is not exempt from attachment, execution, or any other type of seizure for satisfaction of liabilities, and which cannot be readily attached or levied by ordinary legal process in that such property is the income derived from the operation of one or more businesses and or an ownership interest in one or more businesses." Exhibit 3. The order further provided that the Moores were appointed as "constructive trustee(s) of a portion of the gross income derived from the operation of any business or businesses owned or controlled" by them, and that ATSR was "entitled to have a judicially created lien in all of the inventory, equipment, machinery, fixtures, accounts, accounts receivable, notes receivable, general intangibles, contract rights, promissory notes, drafts, checks, and other evidence of the right to the payment of money belonging to" the Moores "and the proceeds and products thereof." *Id*. The order specifically decreed that ATSR was granted a "judicially created lien in all of the inventory, equipment, machinery, fixtures, accounts, accounts receivable, notes receivable, general intangibles, contract rights, promissory notes, drafts, checks, and other evidence of the right to the payment of money belonging to" the Moores, arising from their business operations; and then directed the Moores to

reflect ATSR as lien holder on such collateral, and that ATSR could foreclose its judicial lien under an order of sale issued by the Justice Court. *Id*.[1]

On March 31, 2010, a third order was issued by the Justice Court titled, "Agreed Order Modifying Order Granting Application for Turnover Order." The order provided that, "based on the parties['] agreement," American Bank of Commerce was required to freeze the balance of $11,672.00 in the Moores' checking account and pay $1,000.00 to the attorney for ATSR; and the Moores were to pay $300.00 per month beginning April 15, 2010, to counsel for ATSR, with such payments to continue each month until the judgment was paid in full. Exhibit 5. In the event they failed to make the payments, ATSR could then make application for payment of the frozen balance of $11,672.00; in the event the judgment was paid in full by the installment payments, the freeze of $11,672.00 would dissolve. *Id*. The order further provided that, except as expressly set forth in the order, American Bank of Commerce was immediately released from any further duties and obligations under the terms and conditions of the prior "Order Granting Application for Turnover Order" entered by the Justice Court. The very next paragraph provided that, "[e]xcept as modified herein, all other terms and conditions of [the] Order Granting Application for Turnover Order, remain unaltered." Exhibit 5. This March 31, 2010 order was signed by the judge and reflects to be agreed to by Reuben Hancock, counsel for ATSR, and each of the Moores, Ronnie and Barbara.

---

[1]On March 16, 2010, a UCC Financing Statement was filed with the Secretary of the State of Texas reflecting ATSR as a secured party and the Moores as the debtors, covering inventory, equipment, machinery, fixtures, accounts, accounts receivable, notes receivable, general intangibles, contract rights, promissory notes, drafts, checks, and other evidence of the right to the payment of money belonging to the Moores. Exhibit 4.

After the filing of the bankruptcy case, ATSR filed a proof of claim based on the judgment, reflecting a secured claim of $11,457.15. In the Moores' bankruptcy schedules, at Schedule C – Property Claimed as Exempt, last amended on April 26, 2011, the Moores entered the sum of $11,672.00 on deposit at American Bank of Commerce as exempt property in accordance with section 522(d)(5) of the Bankruptcy Code. No objection was lodged to this exemption claim.

At the hearing on this matter, the Court inquired concerning the treatment of ATSR's claim under the Moores' Chapter 13 plan. The Court also took judicial notice of the confirmed Chapter 13 plan. The plan, as confirmed, provides that ATSR is a secured creditor with a scheduled claim amount of $11,457.15 and a collateral value of $11,672.00; it is included for payment under the plan in the amount of $235.00 per month, based on the Moores' payments to the Trustee that range from $1,800.00 per month to $2,350.00 per month. ATSR's claim accrues interest of 5.25% per annum. The plan anticipates a 5% dividend to unsecured creditors, which, according to the plan, are scheduled in the amount of $80,797.17. The Chapter 13 plan contains the following provision:

> *THE VALUATION OF COLLATERAL AND INTEREST RATE TO BE PAID ON THE ABOVE SCHEDULED CLAIMS IN E(1) AND E(2)(a) AND (b) WILL BE FINALLY DETERMINED AT CONFIRMATION. THE CLAIM AMOUNT WILL BE DETERMINED BASED ON A TIMELY FILED PROOF OF CLAIM AND THE TRUSTEE'S RECOMMENDATION CONCERNING CLAIMS ("TRCC".)*

> *EXCEPT FOR "VALUATION" AND "INTEREST RATE," CONFIRMATION HEREOF SHALL BE WITHOUT PREJUDICE TO THE DEBTOR'S, THE TRUSTEE'S, OR ANY SECURED CREDITOR'S RIGHT TO A LATER DETERMINATION OF THE ALLOWED AMOUNT OF ANY CREDITOR'S SECURED CLAIM. TO THE EXTENT SUCH CLAIM IS ALLOWED FOR AN AMOUNT GREATER OR LESSER THAN THE "SCHEDULED AMOUNT"*

*PROVIDED FOR ABOVE, AFTER THE TRCC IS FINAL, DEBTOR WILL MODIFY THE PLAN TO FULLY PROVIDE FOR SUCH ALLOWED SECURED CLAIM.*

Debtor's Chapter 13 Plan and Motion for Valuation at p.3. The order confirming the plan, entered by the Court on February 28, 2011, is consistent with the treatment of ATSR reflected in the debtors' Chapter 13 plan.

## Discussion

The Moores contend that ATSR's secured interest in the $11,672.00 is a "judicial lien" that impairs their exempt interest in the funds and thus, under section 522(f)(1)(A), is subject to avoidance.[2] ATSR argues that its interest or "lien" on the frozen funds is not a "judicial lien" as contemplated by the Bankruptcy Code and that the Moores, by agreeing to pay ATSR $300.00 per month per the March 31, 2010 agreed order, removed "the possibility of the Agreed Judgment constituting a 'judicial lien.'" ATSR's Response at p.3. At the hearing on the matter, ATSR urged for the first time that the Moores are judicially estopped by the confirmed Chapter 13 plan from contesting ATSR's secured status. This argument was made in response to the Court's questions concerning the plan's treatment of ATSR's claim.

As for the issue specifically pitched to the Court—whether the ATSR interest is a judicial lien subject to avoidance—the Court is satisfied that, as a threshold matter, ATSR's interest in the frozen funds is a judicial lien. This conclusion arises from the messy set of facts arising from the three orders from the Justice Court. The first and third orders, the March 1 order and the March 31 agreed order, are related as the agreed order modifies the first order. If just these two orders

---

[2]It is interesting to note that the Moores, through counsel's argument at the hearing on this matter, take the position that even if ATSR's interest is voided, ATSR will continue to receive payments on its "secured" claim in accordance with the confirmed plan. The net effect, then, is that ATSR would no longer have its "security" for the Moores' plan obligation.

were considered as part of the factual background, it would appear that ATSR's interest in the funds arises from the imposition of a freeze placed on the account in which the funds are deposited. The agreed order represents the parties' agreement concerning the means—i.e., the repayment plan—by which the Moores were to satisfy the judgment and the effect that such repayment plan would have on the account subject of the freeze. The funds in the account clearly served as security for the Moores' obligation to pay the judgment.

The middle order, the March 15, 2010 order, provided that ATSR was granted, held, and could foreclose a "judicially created lien" on a broad spectrum of properties owned by the Moores, including all accounts, accounts receivable, notes receivable, general intangibles, contract rights, notes, checks, drafts, and other evidences of the right to payment; and whether "now owned or hereafter acquired, and the proceeds and products thereof." Exhibit 3 at p.2.

In assessing whether ATSR's interest in the funds constitutes a judicial lien, the Court recognizes that federal law governs the analysis. *See, e.g., In re Bensen*, 262 B.R. 371, 379 (Bankr. N.D. Tex. 2001). The Bankruptcy Code defines "judicial lien" as a lien obtained by judgment, by sequestration, by levy, or by other judicial or equitable proceeding. *See* 11 U.S.C. § 101(36). A "lien" under the Code is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The March 15 order, standing alone, fits within the definition of a judicial lien. *See In re Monroe*, 282 B.R. 219, 223-24 (Bankr. D. Ariz. 2002) (turnover order qualified as a potential judicial lien because it was obtained by legal proceedings).

However, the fact that the lien was finalized by the pen of a judge and is enforceable by a court does not definitively resolve the question of whether a lien is a "judicial lien" under the

Code. *See In re McMorris*, 436 B.R. 359, 361 (Bankr. M.D. La. 2010) (citing *In re Hart*, 328

F.3d 45 (1st Cir. 2003) (entry of foreclosure judgment does not convert mortgage, a consensual

lien, into a judicial lien)). When deciding whether a lien is consensual or judicial, a court should

look to the origins of the lien—more specifically whether it was first agreed to, like a settlement,

mortgage, or contract; or forced upon one of the parties by the other through the leverage of

judicial power. *In re Inman*, 131 B.R. 789, 792 (Bankr. N.D. Tex. 1991); *In re Levi*, 183 B.R.

468, 471 (Bankr. N.D. Tex. 1995), quoting *In re Haynes*, 157 B.R. 646, 648 (Bankr. S.D. Ind.

1992) ("The key is not the name of the document creating the lien, but whether the lien arose by

agreement or by a nonconsensual legal or equitable process.").  If a creditor first obtains an

interest in a debtor's property by virtue of a judicial action, then he has a judicial lien on that

property, not a consensual one. *Inman*, 131 B.R. at 792 (citing *In re Boyd*, 31 B.R. 591, 594 (D.

Minn. 1983) *aff'd*, *Boyd v. Robinson*, 741 F.2d 1112 (8th Cir. 1984)).

   ATSR argues, in effect, that the Court should focus on the March 31, 2010 agreed order

as representative of an agreement between the parties which, in turn, constitutes the Moores'

"voluntary action" that "removes the possibility of [such order] constituting a 'judicial lien.'" *See*

ATSR's Response at p.3. This ignores the other two orders, however. By the time of the agreed

order, ATSR already had its judicially created interest in the funds, which undoubtedly dictated

the terms of the agreed order. The agreed order merely outlined a payment plan. Given the nature

of ATSR's interest and how it arose, the Court concludes that ATSR's interest in the funds is a

judicial lien for purposes of section 522(f)(1)(A). The parties do not dispute the account was

properly claimed as exempt or that ATSR's "lien" impairs the exemption. *See* 11 U.S.C. § 522(f)(2)(A).[3]

The remaining issue is whether the Court should consider ATSR's argument, made for the first time at the hearing on the matter, that the Moores are judicially estopped from attacking its interest in the frozen funds. Such a claim is in the nature of an affirmative defense and, were this an adversary proceeding, must be pleaded. *See* Fed. R. Civ. P. 8(c)(1). An action to avoid a lien under section 522(f), however, is a contested matter made by motion. *See* Fed. R. Bankr. P. 4003(d). As such, Rule 8, which requires the pleading of affirmative defenses, is not applicable. *See* Fed. R. Bankr. P. 9014(c). Despite the absence of this formal pleading requirement, the application of judicial estoppel here is problematic. Such defense is arguably lost if not "timely raised" in some fashion. *See In re Ginter*, 349 B.R. 193, 197 (B.A.P. 8th Cir. 2006). In addition, the very nature of judicial estoppel militates against application in this case. Judicial estoppel was recently described by the Fifth Circuit as follows:

> "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 James Wm. Moore et al., Moore's Federal Practice § 134.30 at 63 (3d ed. 2011) (hereinafter "Moore's"). It is "an equitable doctrine invoked by a court at its discretion" to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal

---

[3]This provision provides as follows:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

quotation marks and citations omitted). While enumerating several factors that typically inform the decision whether to apply the doctrine in a particular case, the Supreme Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," stating instead that different considerations "may inform the doctrine's application in specific factual contexts." *Id.* at 751, 121 S.Ct. 1808; *see also* 18 Moore's § 134.31 at 73 ("Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice . . . . Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 at 553 (2d ed. 2002) ("The concern [of judicial estoppel] is to avoid unfair results and unseemliness.").

*Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011). The courts look to the following three elements in determining whether to apply judicial estoppel:

(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;

(2) a court accepted the prior position; and

(3) the party did not act inadvertently.

*Id.* at 574. Finally, the Fifth Circuit has stated that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.* (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

In the present case, there is no evidence that the Moores derived an unfair advantage or that ATSR was prejudiced in some fashion by the Moores' arguably inconsistent positions. ATSR does not contend that it would have taken a different position relative to the Moores' Chapter 13 plan had it known the Moores would later seek avoidance of its lien under section 522. The Court was not misled as section 522(f) motions are simply not part of the confirmation process. Confirmation concerns section 1325 of the Bankruptcy Code. Confirmation of a Chapter 13 plan

- 10 -

takes place early-on in the case and thus well before claims are resolved. *See* 11 U.S.C. § 1324(b). There is, therefore, no component of the Moores persuading the Court to accept the earlier position, i.e., that the lien of ATSR constitutes a valid judgment lien. And, most important, it can be argued that the Moores have not taken inconsistent positions between the plan confirmation and this action. At the time of the confirmation hearing, ATSR did indeed have a valid judgment lien, which the Moores had to provide for in their Chapter 13 plan. Such lien was *potentially* subject of avoidance under section 522(f). *See Ginter*, 349 B.R. at 198. The facts here are not like the situation where a debtor purposely fails to disclose an asset to the bankruptcy court, a situation where "[j]udicial estoppel is particularly appropriate." *Reed*, 650 F.3d at 574.

In light of the late assertion of the defense of judicial estoppel, the lack of evidence concerning such claim, and the very nature of the equitable defense, the Court will not apply judicial estoppel here. *See Ginter*, 349 B.R. at 198. The interest of ATSR in the frozen funds will be avoided in accordance with section 522(f)(1)(A) of the Bankruptcy Code.

### End of Memorandum Opinion ###